## LOFFLAND BROS. CO. et al. v. BONNER et al.

No. 21885. Opinion Filed Sept. 22, 1931.

Rehearing Denied Oct. 13, 1931.

Randolph Haver, Shirk & Bridges, for petitioners.

Scott P. Squyres and Perry W. Morton, for respondents.

HEFNER, J. This is an original proceeding to review an award of the State Industrial Commission in which the Commission found that M. H. Bonner, claimant, had sustained a 60 per cent. loss of the use of sight of both eyes. It found that he had sustained 100 per cent. loss of the use or sight of his left eye and a 20 per cent. loss of the use or sight of his right eye, and, considering the two together, arrived at the conclusion that he was entitled to compensation for 60 per cent. loss of the use or sight of both eyes; in other words, that he was entitled to 60 per cent. of permanent total disability, and ordered Loffland Brothers Company and its insurance carrier to pay claimant compensation at the rate of $18 per week for 300 weeks.

It is conceded by petitioners that claimant sustained a total loss of sight to the left eye, but they contend that there is no evidence which establishes that he sustained any permanent loss of sight of the right eye.

Claimant testified that prior to the loss of his left eye, his right eye was normal; that since the loss of the left eye, he cannot see well out of his right eye, and that he still suffers considerable pain in that eye.

Drs. Shelton and Guthrie both testified that claimant has sustained a 20 per cent. loss of sight to his right eye, and that in their opinion this condition is due to the loss of the left eye. As to the permanency of this condition, Dr. Shelton testified:

"Q. There is a possibility that under treatment it could be restored to normal? A. Well, I do not know. Having no pathology at the present time, it would look like there would be a chance. * * * Q. Doctor, if this man's vision in the right eye was due, as is your opinion, to the accident, do you think that vision could be restored? A. Well, the loss of vision would not be caused directly by the accident, but by a sympathetic neurosis, the amount of pathology which is very slight, if this irritation was removed and proper treatment given, the vision would be improved, and possibly may go back to normal, but I am not able to say about that. Q. Doctor, this accident occurred on May 4th of this year, several months ago, do you not think enough time has elapsed between now and then for it to be more or less stable? A. Well, sympathetic irritation can come up at any time in the life of the patient. I would advise the treatment of that eye, and in an unexpected way. I would advise the treatment to see if we could get some improvement. If we did not get any improvement, we would not be loser, and if we did we would be gainer. Q. And you would

not say the case would be improved? A. No."

Dr. Guthrie testified as follows:

"Q. Then, doctor, it is not much of an unusual thing for a person to suffer a loss of vision in the remaining eye when one eye had to be removed, because of a serious aggravation? A. Yes, I would say it is unusual, but it happens. It is not unusual, it happens in a number of cases. Q. Doctor, is it your opinion that, from your examination in May, and then again this week, that this man's eye is in about the same condition now that it would continue to be in? A. Well, we have no way of telling whether it has improved or not. Q. Well, it has been injured some six months. Ordinarily, does an eye recover in that time? A. It most likely will remain the same if it has remained the same for a period of six months. Of course, there is a possibility for improvement. Q. But you are not able to say definitely whether treatment to that eye would improve it? A. I do not know whether it would or not."

Dr. Westfall testified that, in his opinion, claimant has sustained no permanent loss to the vision of his right eye. In our opinion the evidence of Drs. Shelton and Guthrie is sufficient to sustain the finding of the Commission in this respect.

Petitioners further contend that the Commission used the wrong method of computation in fixing its award. The Commission followed the method approved by this court in the case of Maryland Casualty Co. v. State Industrial Commission, 139 Okla. 302, 282 P. 293. It is there said:

"Under the provisions of the Workmen's Compensation Act, section 7290, C. O. S. 1921, as amended by Session Laws 1923, c. 61, sec. 6, a workman who loses both eyes in an accident arising out of his employment is entitled to recover two-thirds of his weekly wages for 500 weeks; and such workman is entitled to like compensation for 100 weeks for the loss of one eye. For the permanent partial loss of sight of an eye, compensation shall be paid during that portion of the number of weeks provided for the total loss of such sight which the partial loss thereof bears to the total."

The holding in this case was followed and approved in the case of Capitol Drilling Co. v. Cole, 143 Okla. 279, 288 P. 473. Under the authority of these cases, the award must be sustained.

Petition to vacate is denied.

LESTER, C. J., and RILEY, CULLISON, SWINDALL, and McNEILL, JJ., concur. CLARK, V. C. J., and ANDREWS and KORNEGAY, JJ., absent.

See under (1) Annotation in 8 A. L. R. 1326; 24 A. L. R. 1467; 73 A. L. R. 708; 28 R. C. L. 820, 821; R. C. L. Perm. Supp. p. 6243. (2) 28 R. C. L. 828; R. C. L. Perm. Supp. p. 6254; R. C. L. Pocket Part, title Workmen's Compensation Acts, § 116.